UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


DERRICK JEROME ALLEN (#295151)

VERSUS                                    CIVIL ACTION

N. BURL CAIN, ET AL                       NUMBER 11-211-SDD-SCR

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, July 30, 2013.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DERRICK JEROME ALLEN (#295151)

VERSUS                                    CIVIL ACTION

N. BURL CAIN, ET AL                       NUMBER 11-211-SDD-SCR

**MAGISTRATE JUDGE'S REPORT**

Before the court is the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody filed by Derrick Jerome Allen.

For the reasons which follow, the petition should be denied.

## I. State Court Procedural History

### A. Trial Court

Petitioner was found guilty of one count possession of a controlled dangerous substance in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, Louisiana on March 15, 2007. Petitioner was adjudicated a fourth felony habitual offender and was sentenced to a 55 year term of imprisonment at hard labor without benefit of probation, parole or suspension of sentence.

### B. Direct Appeal

Petitioner appealed asserting two grounds for relief:

(1) the trial court erred in denying the motion to suppress the evidence; and,

    (2)  the trial court erred in granting the defendant's motion to represent himself.

The First Circuit Court of Appeal affirmed the petitioner's conviction and habitual offender adjudication, and amended and then affirmed the amended sentence. *State of Louisiana v. Derrick Allen*, 2007-1688 (La. App. 1st Cir. 2/20/08), 977 So.2d 306 (Table). Petitioner sought supervisory review by the Louisiana Supreme Court, which denied review on March 6, 2009. *State of Louisiana v. Derrick Allen*, 3 So.3d 481, 2008-1465 (La. 3/6/09).[1]

## C. Post-Conviction Relief

Petitioner signed an application for post-conviction relief ("PCRA") on April 22, 2009, and it was filed on May 1, 2009. Petitioner asserted the following grounds for relief:

    1.  the trial court erred when it failed to rule on a motion for new trial;

    2.  the trial court erred when it adjudicated the petitioner a fourth felony habitual offender and imposed a sentence consistent with this finding;

    3.  his right to appeal was abridged when the appellate court did not consider his closing arguments, his motion to recuse, his second *Brady* motion, his medical records or a civil lawsuit the petitioner filed against the trial judge and his staff;

    4.  he was required to wear a prison arm band and

---

[1] Petitioner filed a *pro se* supplemental brief in which he asserted the following grounds for relief: (1) petitioner's right to appellate review was denied due to an incomplete record and transcript; and (2) the trial court erred in denying the motion to suppress the evidence. Petitioner's first *pro se* ground for relief was not raised in the Louisiana First Circuit Court of Appeal.

plastic ties around his ankles during trial in violation of his constitutional rights;

5.    the trial court erred when it refused to order the State to proceed with his trial on January 9, 2006 and on October 18, 2006, and as a result lost its jurisdiction over the petitioner;

6.    the trial court lost jurisdiction over the petitioner when it failed to order a Sanity Commission after commenting that the petitioner was crazy;

7.    the trial court lacked jurisdiction to conduct a habitual offender adjudication hearing because the petitioner went to the hospital for treatment of a broken arm;

8.    he was denied effective assistance of counsel from former counsel when:

a.    counsel allowed the preliminary hearing and motion to suppress hearing to be heard on the same date;

b.    counsel failed to subpoena the doctors who treated the petitioner following his accident to testify at the suppression hearing;

c.    counsel wanted the petitioner to testify at the suppression hearing regarding the extent of his injuries sustained in the accident, but the petitioner believed the testimony would be inaccurate so he did not testify;

d.    counsel did not call Officer Kennedy to testify at the preliminary hearing; and,

e.    counsel failed to call several witnesses at the motion to suppress hearing;

9.    he was denied effective assistance of counsel from former counsel (Hollingsworth) when:

a.    counsel conspired with Lance Joseph, the petitioner's civil attorney, to support

3

Hollingsworth's motion to withdraw;

  b. counsel failed to investigate the case and encouraged the petitioner to enter a guilty plea; and,

  c. counsel advised the petitioner to accept representation from the Appellate Project on appeal;

10. he was denied effective assistance of counsel on appeal when:

  a. appellate counsel failed to obtain a complete transcript of his entire file by omitting the transcript of his motion to recuse the trial judge and the transcript of his civil suit against the trial judge;

  b. appellate counsel filed only two assignments of error and did not brief claims of actual innocence, sufficiency of the evidence and excessive sentence; and

  c. appellate counsel did not seek writs to the United States Supreme Court;

11. the court and the prosecutor assisted him during trial which deprived him of his right to represent himself totally;

12. newly discovered evidence showed that his civil attorney Lance Joseph conspired to cause his automobile accident and plant drugs on him;

13. the Louisiana First Circuit Court of Appeal decision upholding his conviction and sentence is incorrect, distorted and unsupported by the record evidence;

14. the prosecutor engaged in prosecutorial misconduct when:

  a. the prosecutor's decision to try a case other than his in January 2006 and October 2006 resulted in prejudice

4

because the memories of his witnesses faded and the evidence became stale;

b.   the prosecutor refused to offer open file discovery and to provide him with detailed statements of expected testimony from the state's witnesses;

c.   the prosecutor admitted hearsay testimony; and

d.   the prosecutor attempted to confuse him during trial with illegal objections;

15.  he was denied the right to a jury trial when the court excused the jury before ruling on his request to have the charges dismissed which he urged in the jury's presence; and,

16.  the prosecutor's decision to withdraw her offer of open files discovery resulted in a *Brady* violation.

The trial court denied the PCRA on October 9, 2009. Petitioner was granted until December 9, 2009 to file an application for supervisory review with the Louisiana First Circuit Court of Appeal.

On November 30, 2009, the petitioner sought review by the Louisiana First Circuit Court of Appeal.  Petitioner asserted the two grounds for relief:

1.   the trial court erred in dismissing the application for post-conviction relief without addressing all issues raised in the PCRA; and,

2.   the trial court erred in ruling on the petitioner's post-conviction relief application when there was a motion to recuse pending.

The Louisiana First Circuit Court of Appeal denied review. *State of Louisiana v. Derrick Jerome Allen*, 2009-KW-2286 (La. App.

5

1st Cir. 2/17/10).

Petitioner sought, and was apparently granted, an extension of time to seek supervisory review in the Louisiana Supreme Court.  On June 22, 2010, the petitioner sought review by the Louisiana Supreme Court, which denied review on January 14, 2011.  *State ex rel. Derrick Jerome Allen v. State of Louisiana,* 2010-0646 (La. 1/14/11), 52 So.3d 897.

**D. Federal Habeas Corpus Application**

Petitioner signed his federal habeas corpus application on March 28, 2011, and it was filed on March 30, 2011.  On February 16, 2012, the petitioner filed a Supplement to Original Writ of Habeas Corpus.[2]  On March 13, 2013, the petitioner filed a 2nd Supplement to Original Writ of Habeas Corpus.[3]

Petitioner raised the following grounds for relief:

1.   his conviction was obtained by use of evidence gained pursuant to an unconstitutional search and seizure (Fourth Amendment rights were violated by the search and seizure of his shorts);

2.   his conviction was obtained by use of evidence obtained pursuant to an unlawful arrest;

3.   the trial court erred in allowing the petitioner to represent himself without appointing stand-by counsel;

4.   the trial court erred in failing to consider his motion for new trial before sentencing

---

[2] Record document number 16.

[3] Record document number 37.

him;

5.  he was denied proper review on direct appeal because the record was incomplete;

6.  he was denied the opportunity to review the pre-sentence investigation report ("PSI Report") prior to sentencing;

7.  he was denied access to the courts when several claims raised in his PCRA were not specifically addressed by the trial court;

8.  the trial court erred when it failed to order a sanity hearing after calling into question the petitioner's sanity;

9.  actual innocence;

10. he was denied a fair trial and to call witnesses on his behalf because of dilatory tactics and prosecutorial misconduct (he was denied a fair trial when the prosecutor failed to proceed to trial on January 9, 2006 and October 18, 2006)[4]; and,

11. he was denied due process and equal protection when the trial judge failed to recuse himself.[5]

## II. Applicable Law and Analysis

### A. Standard of Review

Section 2254(d) provides  as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

---

[4] Record document number 16, Supplement to Original Writ of Habeas Corpus.

[5] Record document number 37, 2nd Supplement to Original Writ of Habeas Corpus.

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(e)(1) provides as follows:

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Subsection (d)(2) of § 2254 applies to a state court's factual determination.  It bars federal court relief unless the state court adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence."  Subsection (d)(1) provides the standard of review for questions of law and mixed questions of law and fact.  *Drinkard v. Johnson*, 97 F.3d 751, 767-68 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107, 117 S.Ct. 1114 (1997).

The second clause of subsection (d)(1) refers to mixed questions of law and fact because it speaks of an "unreasonable application of ... clearly established Federal law."  When the issue before the court is a mixed question of law and fact, the court may grant relief only if it determines that the state court decision rested on "an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court," to

8

the facts of the case.  The first clause of subsection (d)(1) refers to questions of law.  When the issue raised involves a purely legal question, the court may grant relief only if it determines that a state court's decision rested on a legal determination that was "contrary to...clearly established Federal law, as determined by the Supreme Court." *Id.*

Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, ____ U.S. ____, ____, 131 S.Ct. 1388, 1399, 179 L.Ed.2d 557 (2011); *McCamey v. Epps*, 658 F.3d 491, 497 (5th Cir. 2011).  Review under § 2254(d)(1) focuses on what a state court knew and did.  *Cullen v. Pinholster*, 131 S.Ct. at 1399. "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review.  If a claim has been adjudicated on the merits by a state court, a federal habeas corpus petitioner must overcome the limitation of § 2254(d)(1) based on the record that was before that state court." *Id.*, at 1400.  State court decisions are measured against the Supreme Court's precedents as of "the time the state court renders its decisions." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S.Ct. 1166 (2003).  *Pinholster* prohibits a federal court from using evidence that is introduced for the first time at a federal-court evidentiary hearing as the basis for concluding that a state court's adjudication is not entitled to deference under § 2254(d).  *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir.

9

2011).[6]

To determine whether a particular decision is "contrary to" then-established law, a federal court must consider whether the decision "applies a rule that contradicts [such] law" and how the decision "confronts [the] set of facts" that were before the state court. *Williams v. Taylor*, 529 U.S. 362, 405, 406, 120 S.Ct. 1495, 1519 (2000). If the state court decision "identifies the correct governing legal principle" in existence at the time, a federal court must assess whether the decision "unreasonably applies that principle to the facts of the prisoner's case." *Id.*, at 413, 120 S.Ct. at 1523.

## B. Grounds 4, 5, 6 and 8: Procedurally Barred

The trial court summarily dismissed the petitioner's claims that the trial court erred in failing to consider his motion for new trial before sentencing him (federal habeas corpus Ground 4), he was denied proper review on direct appeal because the record was incomplete (federal habeas corpus Ground 5), he was denied the opportunity to review the PSI Report prior to sentencing and the judge used the same predicate twice during the habitual offender

---

[6] The Fifth Circuit Court of Appeals has held that a federal court may properly hold an evidentiary hearing when it determines, based solely on the state court record, that the state court's determination was contrary to or involved an unreasonable application of clearly established federal law. *Bobby Smith v. Burl Cain*, 708 F.3d 628, 634 (5th Cir. 2013).

sentencing (federal habeas corpus Ground 6).[7]   The trial court cited La.C.Cr.P. art. 930.3, which limits the grounds on which a prisoner may seek post-conviction relief.   In addition, the trial court summarily dismissed the petitioner's claim that the trial court erred when it failed to order a sanity hearing after calling into question the petitioner's sanity (federal habeas corpus Ground 8) citing La.C.Cr.P. art. 930.4.[8]

When a state court decision to deny relief rests on a state law ground that is independent of the federal questions raised by the petitioner and is adequate to support the judgment, the federal courts lack jurisdiction to review the merits of the petitioner's federal claims.  *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 2553 (1991); *Moore v. Roberts*, 83 F.3d 699, *reh. denied*, 95 F.3d 56 (5th Cir. 1996).   The independent and adequate state ground doctrine "applies to bar federal habeas when a state court decline[s] to address a prisoner's federal claims because the prisoner ha[s] failed to meet a state procedural requirement." *Coleman*, at 729-730, 111 S.Ct. at 2554.

> In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court.   The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.

---

[7] Commissioner's Report, pp. 4-5.

[8] *Id.* at 7.

*Id.*, at 731-32, 111 S.Ct. at 2554-55 (quoting *Rose v. Lundy*, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203 (1982)); *Moore*, at 703.

For the independent and adequate state ground doctrine to apply, the state courts adjudicating a habeas petitioner's claim must explicitly rely on a state procedural rule to dismiss the petitioner's claims. *Moore*, at 702; *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995). The procedural default doctrine presumes that the "state court's [express] reliance on a procedural bar functions as an independent and adequate ground in support of the judgment." *Id*. Petitioner can rebut this presumption by establishing that the procedural rule is not "strictly or regularly followed." *Id*. Even if the state procedural rule is strictly and regularly followed, the petitioner can still prevail by demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565; *Moore*, at 702.

Petitioner did not even attempt to establish that the procedural rule of Articles 930.3 and 930.4 have not been "strictly or regularly followed," *Sones*, at 416, by the Louisiana state courts. Nor did the petitioner present any argument that he has overcome the procedural bar by demonstrating the necessary cause

and prejudice[9] or a fundamental miscarriage of justice.[10]

**C. Grounds 1 and 2: Unconstitutional Search and Seizure**

In his federal habeas corpus Grounds 1 and 2 the petitioner argued that his conviction was obtained by use of evidence gained pursuant to an unconstitutional search and seizure. Specifically, the petitioner argued that his Fourth Amendment rights were violated by the search and seizure of his shorts. Petitioner argued that the trial court erred in denying his motion to suppress evidence.

Fourth Amendment violations are generally not cognizable on federal habeas review. *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037 (1976). In *Stone* the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an

---

[9] The "cause" standard requires the petitioner to show that "some objective factor external to the defense" prevented him from timely raising the claims he now advances. *Murray v. Carriere*, 447 U.S. 478, 488, 106 S.Ct. 2639, 2645 (1986). Objective factors that constitute cause include interference by officials that make compliance with the procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel at the prior occasion, and ineffective assistance of counsel in the constitutional sense. *Id*.
    In addition to establishing cause for his procedural default, the petitioner must also show actual prejudice to overcome it.

[10] To prove a fundamental miscarriage of justice, the petitioner must assert his actual innocence. *Glover v. Hargett*, 56 F.3d 682, 684 (5th Cir. 1995). Petitioner did assert actual innocence as his Ground 9 for relief. However, this ground for relief, as explained below, has no merit.

unconstitutional search or seizure was introduced at trial." *Id.* at 494, 96 S.Ct. at 3052.   The Fifth Circuit has interpreted an "opportunity for full and fair litigation" to mean just that: "an opportunity." *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978).   "If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes." *Id.*

Petitioner had an opportunity to raise his unlawful search and seizure claim in a pre-trial motion to suppress evidence. *See* LSA-C.Cr.P. Art. 703.   Because the petitioner had an opportunity for a full and fair hearing on his Fourth Amendment claims in state court, *Stone* forecloses review of this claim in a federal habeas proceeding.

### D. Ground 3: Waiver of Counsel

In his federal habeas corpus Ground 3 the petitioner argued that his waiver of counsel prior to the beginning of his criminal trial was not knowing and intelligent and therefore was in violation of the Sixth Amendment.

A defendant has a Sixth Amendment right to self-representation when he voluntarily and intelligently elects to do so. *Faretta v. California,* 422 U.S. 806, 807, 95 S.Ct. 2525, 2527 (1975).   A defendant must understand that he is not just relinquishing the right to counsel but also the specific benefits associated with

14

representation by counsel. *Id*. at 835, 95 S.Ct. at 2541. "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits." *Id*. To ensure that the defendant's choice of self-representation is voluntary and intelligent, the Court noted that "[a]lthough a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id*. (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236 (1942)). The court must consider the defendant's age and education, and other background, experience, and conduct. The court must ensure that the waiver is not the result of coercion or mistreatment of the defendant, and must be satisfied that the accused understands the nature of the charges, the consequences of the proceedings, and the practical meaning of the right he is waiving. *United States v. Martin*, 790 F2d 1215, 1218 (5th Cir. 1986) (internal citations omitted).

The "assistance of standby counsel, no matter how useful to the court or the defendant, cannot qualify as the assistance of

counsel required by the Sixth Amendment." *United States v. Taylor*, 933 F.2d 307, 312 (5th Cir. 1991).  As a result, the presence of standby counsel is not an effective substitute for the required *Faretta* inquiry. *United States v. Balogun*, 228 F.3d 408 (5th Cir. 2000).

In order to determine if the criminal defendant has effectively waived the right to counsel, a district court must consider the totality-of-circumstances. *United States v. Virgil*, 444 F.3d 447, 453 (5th Cir. 2006) (citing *United States v. Davis*, 269 F.3d 514, 518 (5th Cir. 2001)).  The Supreme Court "[has] not ... prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." *Iowa v. Tovar*, 541 U.S. 77, 88, 124 S.Ct. 1379, 1387 (2004).  "There is no sacrosanct litany for warning defendants against waiving the right to counsel." *Virgil*, 444 F.3d at 453 (internal quotation omitted) (quoting *United States v. Jones*, 421 F.3d 359, 364 (5th Cir. 2005)).  When raised in a collateral attack, the burden rests on the criminal defendant to prove that his waiver of counsel was ineffective. *Tovar*, 541 U.S. at 92, 124 S.Ct. at 1390.

A review of the record showed that prior to trial, counsel for the petitioner moved to withdraw.[11]  During the hearing on the Motion to Withdraw as Counsel, the petitioner advised the court

---

[11] State Court Record, Vol. 3, pp. 501-524.

that he wanted to represent himself.[12]  Petitioner unequivocally asserted his right to self-representation and the trial court granted the request.[13]  The trial judge repeatedly asked the petitioner if he wanted to represent himself and in each instance the petitioner indicated that he did, despite being repeatedly cautioned about the risks of doing so.  The trial judge warned the petitioner that he was responsible for complying with the rules and procedures of court and would not be given any slack because he was representing himself.[14]  The trial judge advised the petitioner of the consequences of not entering the plea agreement and his sentence exposure if found guilty and adjudicated a habitual offender.[15]  Petitioner indicated that he understood the consequences and reasserted his desire to represent himself.[16]

The record indicates that the trial judge properly made the petitioner aware of the dangers and disadvantages of self-representation, and the colloquy between the trial judge and the petitioner sufficiently indicated that the petitioner's waiver was knowing and intelligent.

Insofar as the petitioner asserted that the trial court erred

---

[12] *Id*. at 504; 505; 512; 515.

[13] *Id*. at 512.

[14] *Id*. at 504; 508.

[15] *Id*. at 507; 509-510.

[16] *Id*. at 507; 510.

by failing to appoint standby counsel, the claim is without merit. A defendant's statutory right to choose *pro se* or attorney representation is "disjunctive"; a defendant has a right to one or the other, but not a combination of the two. *United States v. Daniels*, 572 F.2d 535, 540 (5th Cir. 1978).

Petitioner was constitutionally guaranteed the right to represent himself as he chose, or to receive competent representation from an attorney, but the availability of standby counsel to provide a combination of the two was not constitutionally required. *United States v. Mikolajczyk*, 137 F.3d 237, 246 (5th Cir. 1998); *Batchelor v. Cain*, 682 F.3d 400, 409 (5th Cir. 2012); *United States v. Allison*, 264 Fed.Appx. 450, 453 (5th Cir. 2008).

Furthermore, "[t]he Court may appoint ... 'standby counsel' to aid the accused if and when the accused requests help...." *Faretta v. California*, 422 U.S. 806, 832-34, 95 S.Ct. 2525, 2540 (1975), *citing United States v. Dougherty*, 437 F.2d 1113, 1124-26 (D.C. Cir. 1972).  There is no evidence that the petitioner made such a request or was prevented from making one.

**E. Ground 7: Access to Courts**

In his federal habeas corpus Ground 7 the petitioner argued that he was denied access to the courts when the trial court failed to specifically address several issues raised in his PCRA. Petitioner argued that the trial court failed to specifically

18

address the following claims: (a) Edward James was using drugs while assigned to his case and failed to investigate matters assigned by former counsel; (b) the trial court denied his request for materials needed to reenact crime scene for the jury; (c) law book was not delivered by the assistant district attorney; (d) the assistant district attorney interfered with his self-representation at trial; (e) the State of Louisiana and the trial judge acted as stand-by counsel during his criminal trial; and, (f) his former counsel misled him regarding the existence of a fence at the corner of Winbourne and Scenic Hwy.

The alleged failure by the trial court to address specific claims in the petitioner's PCRA is not, standing alone, a claim upon which the petitioner can obtain federal habeas corpus relief. Nevertheless, the court will address underlying claims as grounds for relief in the petitioner's federal habeas corpus application.

### a. and f. - Failure to Investigate

Petitioner alleged that he received ineffective assistance of counsel when counsel and his investigator failed to investigate his case.

To obtain habeas relief based upon a claim of ineffective assistance of counsel, the petitioner must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984). To prove deficient performance

19

the petitioner must demonstrate that counsel's actions "fell below an objective standard of reasonableness." *Id.*, at 688, 104 S.Ct. at 2064; *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511 (2000). There is a strong presumption that counsel performed adequately and exercised reasonable professional judgment. *Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir. 2006). "[A] conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness". *Id.* (internal quotation marks omitted). However, there is a distinction between strategic judgment calls and plain omissions. *See Loyd v. Whitley*, 977 F.2d 149, 158 (5th Cir. 1992). The court is "not required to condone unreasonable decisions parading under the umbrella of strategy, or to fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decision at all." *Moore v. Johnson*, 194 F.3d 586, 604 (5th Cir. 1999).

To prove prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. at 2068. A reasonable probability is "a probability sufficient to undermine confidence in the outcome" and is less than a preponderance of the evidence. *Id.* at 693-94, 104 S.Ct. at 2068; *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct.

838, 844 (1983)(petitioner required to show that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair).  Stated differently, a constitutional trial error is harmful only if there is "more than a mere reasonable possibility that it contributed to the verdict." *Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999).

Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. *Strickland v. Washington*, 466 U.S. at 690-91, 104 S.Ct. at 2066.

A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.  *Druery v. Thaler*, 647 F.3d 535, 541 (5th Cir. 2011).

In the first component of his failure to investigate claim, the petitioner argued that Edward James, the investigator for the Office of the Public Defender, used cocaine while assigned to his case and failed to investigate certain unspecified matters his former counsel instructed him to investigate.  Specifically, the petitioner alleged that he "has been in the presence of Mr. Edward James while he was high on cocaine, and have saw Mr. Edward James purchase cocaine on several different occassion [sic], therefore he

21

was 100% ineffective during this whole ordeal and by chance never even investigating certain things Mr. Nelvil Hollingsworth told him to do."[17]

First, the petitioner argued that investigator James used cocaine while assigned to his case.  To support this contention, the petitioner argued that he has been present when James was high on cocaine and on several occasions he witnessed James purchase cocaine.  Petitioner's alleged personal knowledge of James' alleged illicit drug use at some unspecified time, standing alone, is insufficient to establish either deficient performance or prejudice.

Second, the petitioner contended that James failed to investigate certain things he was told to do by attorney Hollingsworth.  Petitioner failed to identify what matters investigator James failed to investigate, or to allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.

In the second component of his failure to investigate claim, the petitioner argued that former counsel failed to properly investigate the accident scene and misinformed him about the presence of a fence near the accident site.  Specifically, the petitioner alleged that:

---

[17] State Court Record, Vol. 6, Loose Papers, Petition For Post-Conviction Relief, p. 28.

22

I had Attorney Hollingsworth to go investigate the scene where the police claimed this accident supposely [sic] occured [sic].  Mr. Hollingsworth comes back, and tell the petitioner that it appear to have 40 to 50 feet of new fence where the police found my truck, ... petitioner had been incarcerated for 2½ years at that time, when he went looked at the fence.  Which clearly shows and proved he lied, if it had new fence there, somebody-else must had hit the fence, because if Exxon Plant changed the fence after the May 16, 2004, incident, the fence would not look new, it would be old, after being in the whether for 2½ years.  The bad part about this ordeal, when petitioner was transported to Angola on April 07, 2008, the officer went up Scenic Highway, and petitioner got a good-look at this scene, and where police claimed this incident took place, aint [sic] no fence even there, nothing but parking-lot.  Mr. Hollingswort [sic] and the investigator Edward James on actions for failure to investigate made him ineffective, and petitioner used that ineffective counsel to prepare for trial and during trial.

Petition For Post- Conviction Relief, pp. 25-26.

On May 16, 2004, the police were summoned to the Exxon refinery after the petitioner's vehicle knocked over two concrete barriers and hit the chain link fence bordering the plant near the Scenic Highway and Winbourne Avenue entrance to the plant.[18] Petitioner disputes striking the fence.

Petitioner argued that counsel was ineffective for failing to adequately investigate the accident scene.  Specifically, the petitioner argued that when counsel went to the accident scene over two years after the accident, he observed 40-50 feet of new fence at the accident site.  Petitioner appears to argue that further investigation was warranted because if the fence was in fact

---

[18] *State of Louisiana v. Derrick Allen*, 2007-1688, p. 2.

replaced after his accident in 2004 it should not have appeared "new" more than two years later.   Petitioner reasoned that further investigation might have established that following his accident in 2004 another accident occurred at the exact same location and that the "new" fence was erected as a result of the subsequent accident.

Trial counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies.   *Harrington v. Richter*, ___ U.S. ____, 131 S.Ct. 770, 789 (2011).

Petitioner failed to carry his burden of showing deficient performance and prejudice for former counsel's alleged failure to further investigate the "new" fence.

There is no basis upon which to conclude that there is a reasonable probability that, but for any of the enumerated errors by trial counsel, the result of the proceeding would have been different.   *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

### b. - Indigent Funding

Petitioner argued that as a *pro se* indigent litigant, he did not know where to obtain funding to prepare a defense.   Petitioner argued that the trial court denied his request for a chalk board, tape measure and pair of shorts needed to reenact the crime scene for the jury.

For an indigent defendant to be granted the services of an expert at the expense of the State, he must establish that there

24

exists a reasonable probability that an expert would be of assistance to the defense and that the denial of expert assistance would result in a fundamentally unfair trial. *State v. Touchet*, 93-2839, p. 6 (La. 9/6/94), 642 So.2d 1213, 1216.

Petitioner did not allege, nor is there any evidence in the record, that the petitioner made the requisite showing of his entitlement to these resources.

### c. - Law Book

Petitioner argued that during his criminal trial his cousin retrieved a law book from his house and gave it to Assistant District Attorney ("ADA") Steven Danielson to deliver to the him. Petitioner argued that ADA Danielson did not give him the book as arranged. Petitioner argued that as a result of not receiving the book, he was unable to fully prepare a defense during trial.

The Fifth Amendment protects the defendant from improper governmental interference with his defense. *United States v. Bieganowski*, 313 F.3d 264, 291 (5th Cir. 2002).

Petitioner did not argue that he requested the book from ADA Danielson but he refused to produce it. Moreover, he conceded that during the trial proceedings he did not inform the court that he was in need of the book but had not received it. Petitioner's claim is without merit.

### d. and e. - Infringed Right to Self-representation

Petitioner argued that the ADA and the trial judge improperly

infringed on his right to self-representation.  Specifically, the petitioner argued that while he was questioning Baton Rouge City Police Officer Jeremy Stanley, ADA Danielson interrupted and proceeded to instruct him on how to examine the witness.

A review of the trial transcript showed that ADA Danielson addressed the court asserting an objection on procedural grounds to the petitioner's attempt to have the witness review the transcript of his prior testimony at the hearing on the Motion to Suppress.[19] ADA Danielson's objection was proper and did not infringe on the petitioner's right to self-representation.

### F. Ground 9: Actual Innocence

In his federal habeas corpus Ground 9 the petitioner argued that he is actually innocent.  Specifically, the petitioner argued that at the time of his arrest, police reports indicated that he had been involved in a single vehicle accident in which he drove his pickup truck into a fence located on Scenic Hwy.  Petitioner argued that on April 7, 2008, some four years later, while being transported from Hunt Correctional Center to the state penitentiary, the transport vehicle in which he was a passenger passed in front of the area where the accident occurred.  Petitioner argued that he did not observe a fence at the location where the police said the accident had occurred.  Petitioner argued that the absence of the fence at that location in 2008 supports his

---

[19] State Court Record, Vol. 4, p. 835.

defense theory that the police struck his vehicle and that his civil attorney Lance Joseph caused or was involved in the accident on May 16, 2004.

"Actual innocence" is not a free-standing ground for habeas corpus relief. *Foster v. Quarterman*, 466 F.3d 359, 367 (5th Cir. 2006) ([A]ctual-innocence is *not* an independently cognizable federal-habeas claim."); *Dowthitt v. Johnson*, 230 F.3d 733, 741-42 (5th Cir. 2000), *cert. denied*, 532 U.S. 915, 121 S.Ct. 1250 (2001); *see also Graves v. Cockrell*, 351 F.3d 143, 151 (5th Cir. 2003). "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 40, 113 S.Ct. 853, 862 (1993)(citing *Townsend v. Sain*, 372 U.S. 293, 317, 83 S.Ct. 745, 759 (1963)).

In *McQuiggin v. Perkins*, ____ U.S. ____, ____, 133 S.Ct. 1924, 1931 (2013), the Supreme Court reaffirmed that it has not resolved whether a prisoner may be entitled to habeas corpus relief based on a freestanding claim of actual innocence. In *McQuiggin* the Supreme Court also resolved a circuit split by holding that a habeas petitioner can overcome the expiration of the Antiterrorism and Effective Death Penalty Act (AEDPA) statute of limitations by making a convincing showing of actual innocence. *See McQuiggin*, 133 S.Ct. at 1928 (referencing 28 U.S.C. § 2244(d)(1)). *McQuiggin*

27

held that a petitioner attempting to show actual innocence is required to produce new evidence sufficient to persuade the district court that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."  133 S.Ct. at 1928 (quoting *Schlup v. Delo*, 513 U.S. 298, 329, 115 S.Ct. 851 (1995)). *McQuiggin* held that unjustifiable delay on the part of a habeas petitioner, while not to be viewed as "an absolute barrier to relief," should still be considered as a "factor in determining whether actual innocence has been reliably shown."  *Id*.

Petitioner's stand-alone actual innocence claim is not a cognizable federal habeas claim.  To the extent the petitioner's federal habeas claim can be read to assert an independent constitutional violation occurring in the underlying state criminal proceeding, the claim is nonetheless without merit.

Prisoners asserting actual innocence as a gateway to federal habeas review must (1) present "new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"; (2) "that was not presented at trial"; and (3) must show, that in light of this new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537, 126 S.Ct. 2064, 2077 (2006) *citing Schlup v. Delo*, 513 U.S. 298, 299, 324-29, 115 S.Ct. 851, 854, 865-868 (1995).

28

The *Schlup* standard "is demanding and permits review only in the 'extraordinary' case." *Id*. at 538, 126 S.Ct. at 2077. In applying the *Schlup* standard, the Fifth Circuit has held that: (1) the petitioner "bears the burden of establishing that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence", (2) "there is no presumption of innocence at a habeas proceeding" and the petitioner "comes before the habeas court with a strong-and in the vast majority of the cases conclusive-presumption of guilt", and (3) the *Schlup* standard "does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." *Bosley v. Cain*, 409 F.3d 657, 664 (5th Cir. 2005).

Here, the petitioner did not rely on scientific evidence, physical evidence or trustworthy eyewitness testimony. Rather, the petitioner relied on his own personal observation, made approximately four years after the accident, to buttress his defense theory at trial. Even assuming that the petitioner has presented "new" evidence of the type and quality necessary to establish actual innocence, it is abundantly clear that the petitioner failed to establish that in light of this "new" evidence "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."

## G. Ground 10: Speedy Trial

Insofar as the foundation of the petitioner's speedy trial claim, his federal habeas corpus Ground 10, rests on the proper interpretation and application of state law, this is an issue not within the scope of federal habeas corpus.  A federal habeas court may grant relief when the petitioner is held in custody pursuant to a judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).  Federal courts will not review a state court's interpretation of its own law in a federal habeas corpus proceeding.  *Cook v. Morrill*, 783 F.2d 593 (5th Cir. 1986).

The determination of whether a petitioner's Sixth Amendment right to a speedy trial has been violated requires a careful balancing of the four factors enunciated by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182 (1972).  The factors are: (1) the length of the delay, (2) the reason for the delay, (3) the assertion of the right, and (4) the prejudice to the petitioner.  *Robinson v. Whitley*, 2 F.3d 562 (5th Cir. 1993). These factors "have no talismanic qualities," and "none of the four factors [is] either a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial." *Id*. at 407 U.S. 533, 92 S.Ct. 2193.  The first factor serves as a "triggering mechanism." *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192.

If the length of the delay reaches a threshold level regarded as "presumptively prejudicial," the court must make findings regarding the remaining three factors and balance all of them accordingly. *Id*. The relevant period of delay is that following accusation, either arrest or indictment, whichever occurs first. *Dillingham v. United States*, 423 U.S. 64, 96 S.Ct. 303 (1975); *Robinson*, at 568.

Petitioner was arrested May 16, 2004, and his trial began on March 12, 2007. The Fifth Circuit generally requires the delay of one year to trigger a full speedy trial analysis. *Robinson*, at 568; *Nelson v. Hargett*, 989 F.2d 847, 851 (5th Cir. 1993). The delay of over 34 months between arrest and trial in this case is presumptively prejudicial and therefore requires an examination of the remaining *Barker* factors.

A review of the state court record showed that the offense was committed on May 16, 2004.[20] Prosecution was instituted by the filing of the Bill of Information on July 13, 2004.[21] *See* La. Code Crim. P. art. 382A. Therefore, the State had two years to bring the petitioner to trial, unless this period was interrupted or suspended. *See* La. Code Crim. P. arts. 578(2), 579, & 580.

The state court record showed that on October 27, 2004, upon the joint motion of the State and the defendant, the petitioner's

---

[20] State Court Record, Vol. 1, p. 36.

[21] *Id*.

31

trial was continued to February 14, 2005.[22]  On February 14, 2005, upon the defendant's motion, the trial was continued to April 13, 2005.[23]  On April 13, 2005, upon joint motion of the State and the defendant, the trial was continued to June 14, 2005.[24]

On June 14, 2005, following a hearing on the petitioner's motion to suppress, the court reassigned the trial to September 6, 2005.[25]  On September 6, 2005, upon joint motion of the State and the defendant, the trial was continued to January 9, 2006.[26]  On January 9, 2006, the trial court continued the trial to May 2, 2006, due to another trial in progress.[27]  On May 2, 2006, upon the defendant's motion and over the State's objection, the court continued the trial to August 21, 2006.[28]  On August 2, 2006, the petitioner notified the court that his retained counsel died.[29]  On August 11, 2006, the Office of the Public Defender was appointed to

---

[22] *Id.* at 3.  The minute entry contains a typographical error which indicates that the trial was continued to February 14, **2004** rather than 2005.  Obviously, February 14, 2004 had already passed.

[23] *Id.*

[24] *Id.* at 3-4.

[25] *Id.* at 4.

[26] *Id.* at 4-5.

[27] *Id.* at 5.

[28] *Id.* at 5-6.

[29] *Id.* at 75.

represent the petitioner.[30]   On August 21, 2006, upon the defendant's motion and over the State's objection, the court continued the trial to October 18, 2006.[31]  On October 18, 2006, the trial court continued the trial to December 12, 2006, due to another trial in progress.[32]  On December 12, 2006, the trial court on its own motion continued the trial to February 1, 2007.[33]  On January 16, 2007, the trial court granted the defendant 15 days to seek writs and continued the trial on its own motion to March 12, 2007.[34]  On February 14, 2007, the court denied the petitioner's motion to stay trial proceedings.[35]  On March 12, 2007, the trial proceeded as scheduled.

There is no credible record evidence that the State intentionally delayed the petitioner's trial to gain any tactical advantage, or in fact that any tactical advantage was gained by the State as a result of the delay.

The third factor places the burden on the petitioner to assert his right to a speedy trial.  "[T]he point at which the defendant asserts his right is important because it may reflect the

---

[30] *Id*. at 83.

[31] *Id*. at 7.

[32] *Id*. at 9.

[33] *Id*. at 10–11.

[34] *Id*. at 12.

[35] *Id*. at 13–14.

seriousness of the personal prejudice he is experiencing." *United States v. Palmer*, 537 F.2d 1287, 1288 (5th Cir. 1976), *cert. denied*, 434 U.S. 1018, 98 S.Ct. 738 (1978).

A review of the state court record showed that on October 31, 2006, the petitioner asserted his right to a speedy trial.[36] Thus, the third *Barker* factor weighs slightly in favor of the petitioner.

The final *Barker* factor requires the court to assess the degree of prejudice suffered by the petitioner due to the pretrial delay. In *Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686 (1992), the Supreme Court modified the analysis of this factor. The Court stated that "affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Id.*, 505 U.S. at 655, 112 S.Ct. at 2692. There are situations when "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove, or for that matter, identify." *Id.*, 505 U.S. at 655, 112 S.Ct. at 2693. Depending on the particular circumstances of each case, a petitioner has to show varying degrees of prejudice. The degree of proof required in each situation varies inversely with the state's degree of culpability for the delay. Where the state was reasonably diligent in its efforts to bring the petitioner to trial, the petitioner must show "specific prejudice to his defense." *Id.*, 505 U.S. at 656, 112 S.Ct. at 2693. If the petitioner can show that the state

---

[36] State Court Record, Vol. 1, p. 239.

intentionally held back the prosecution in order to gain an impermissible tactical advantage, then the petitioner would "present an overwhelming case for dismissal." *Id*.

Occupying a position between these two extremes is "official negligence." *Id*. When the state's conduct is neither diligent nor malicious but simply negligent, the court must determine what portion of the delay is attributable to the state's negligence and whether this negligent delay is of such duration that prejudice to the defendant should be presumed. *Id*., 505 U.S. at 657, 112 S.Ct. at 2693. The weight given to the state's negligence varies directly with its protractedness and its consequent threat to the fairness of the petitioner's trial. *Id*.

A review of all the pretrial events supports a finding that the State was reasonably diligent in its efforts to bring the petitioner to trial. Thus, the petitioner must show specific prejudice to his defense.

Petitioner urged that he was prejudiced by a lapse of memory by witnesses and that because of the numerous postponements he lost contact with several witnesses.

A review of the trial transcript showed that the petitioner called nine witnesses.[37] A review of the trial transcript does not support a finding that any witness was unable to respond to the petitioner's questioning because of a lapse of memory. Moreover,

---

[37] State Court Record, Vol. 4, pp. 925-997.

there is no evidence that the petitioner's witnesses were unavailable for trial; they were apparently simply not subpoenaed. Petitioner was not prejudiced by the trial delay.

**H. Ground 11: Trial Judge Recusal**

In his federal habeas corpus Ground 11 the petitioner argued that he was denied due process and equal protection when the trial judge was not removed from presiding over his criminal proceedings on grounds of bias.  Specifically, the petitioner argued that he filed two motions to recuse the trial judge during the pendency of his criminal proceedings on the ground of conflict of interest, because the petitioner had initiated two separate lawsuits against the trial judge during the pendency of his criminal case.

A review of the state court record showed that on October 20, 2006, the petitioner filed a Motion to Recuse Judge.[38]  Petitioner argued that Judge Anderson, the trial judge presiding over his criminal proceedings, was biased because on October 16, 2006, Judge Anderson denied his motion for a one day extension of the trial date from October 18, 2006 to October 19, 2006.  Petitioner argued that on October 18, 2006, upon the State's request, Judge Anderson continued the trial for two months.

Petitioner further argued that Judge Anderson was biased because he filed a letter on behalf of attorney Randy Trelles with

---

[38] State Court Record, Vol. 1, pp. 226-234.

the Louisiana Disciplinary Board in response to a disciplinary complaint the petitioner filed against Trelles.  Petitioner argued that Judge Anderson lied in the letter to the Louisiana Disciplinary Board.[39]

Petitioner further argued that Judge Anderson should have been recused because he filed a complaint against Judge Anderson with the Judiciary Commission and planned to file a civil suit against him.  Petitioner further argued that he believed Judge Anderson and the ADA were trying to pressure him into entering a guilty plea, and Judge Anderson denied his motion to be provided a chalk board, tape measure and shorts to demonstrate the incident to the jury.  Finally, the petitioner argued that Judge Anderson was biased because he failed to provide him with suitable clothing to be worn at his trial scheduled on October 18, 2006.  Petitioner complained that he had gained weight since being incarcerated and his personal clothing was ill-fitting.

On November 9, 2006, the petitioner's criminal case was randomly re-allotted to another criminal section for the sole

---

[39] On October 13, 2006, Judge Anderson sent a letter in response to an inquiry by the Louisiana Disciplinary Board regarding a complaint filed by the petitioner against attorney Randy Trelles.  State Court Record, Vol. 8, Loose Papers.  Judge Anderson advised that following the death of attorney Frank Saia, the Court had been informed that Trelles would be assisting with Saia's open cases.  Judge Anderson advised that Trelles did not enroll in the petitioner's case, made no appearance on his behalf, and when the petitioner notified the court that he did not want to be represented by Trelles, the Court appointed the Public Defender to represent the petitioner.  *Id*.

37

purpose of hearing the petitioner's Motion to Recuse Judge.[40]   On January 4, 2007, the motion was denied and the petitioner filed a notice of appeal, which was denied.[41]

On August 26, 2008, following his conviction and sentence and while an application for review was pending before the Louisiana Supreme Court, the petitioner filed his second Motion to Recuse Judge and Law Clerk.[42] In his second motion to recuse the petitioner argued that Judge Anderson was biased against him because the petitioner filed a civil lawsuit against him and because the petitioner chose to represent himself during his criminal trial.[43]

On  November 5, 2008, a hearing was held and the motion to recuse was denied on the ground that the court was without jurisdiction because the appeal of the petitioner's conviction and sentence was pending before the Louisiana Supreme Court.[44]

Generally, the constitutional due process requirements regarding judicial impartiality are much narrower than the requirements found in recusal statutes and ethical cannons. *See*, *e.g. United States v. Couch*, 896 F.2d 78, 81 (5th Cir. 1990) (stating that 28 U.S.C. § 455, the federal recusal statute,

---

[40] *Id*. at 241.

[41] State Court Record, Vol. 2, p. 257.

[42] State Court Record, Vol. 7, Loose Papers.

[43] State Court Record, Vol. 7, Loose Papers.

[44] State Court Record, Vol. 8, Loose Papers.

"establishes a statutory disqualification standard more demanding than that required by the Due Process Clause"). Thus a violation of a state or federal statute for the failure to recuse a trial judge because certain circumstances may give rise to an appearance of bias on the part of the judge does not necessarily constitute a due process violation.

Under the Due Process Clause, a criminal defendant is guaranteed the right to a fair and impartial tribunal. *Bracy v. Gramley*, 520 U.S. 899, 117 S.Ct. 1793, 1797 (1997). The Due Process Clause "establishes a constitutional floor, not a uniform standard." *Id*. This floor requires a fair trial, "before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Id*. (citation omitted).

However, "bias by an adjudicator is not lightly established." *Bigby v. Dretke*, 402 F.3d 551, 558 (5th Cir. 2005). Courts ordinarily "presume that public officials have properly discharged their official duties." *Bracy v. Gramley*, 520 U.S. at 909, 117 S.Ct. at 1799 (internal quotation marks and citations omitted). General allegations of bias or prejudice are insufficient to establish a constitutional violation. *Buntion v. Quarterman*, 524 F.3d 664, 672 (5th Cir. 2008)(citing *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 822, 106 S.Ct. 1580, 1585 (1986).

In general, the Supreme Court has recognized "presumptive bias" as the one type of judicial bias other than actual bias that

requires recusal under the Due Process Clause. *Buntion*, 524 F.3d at 672. Presumptive bias occurs when a judge may not actually be biased, but has the appearance of bias such that "the probability of actual bias ... is too high to be constitutionally tolerable." *Id.* (quoting *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464 (1975)).

The Supreme Court has found presumptive bias in the following circumstances:

(1)  when the judge "has a direct personal, substantial, and pecuniary interest in the outcome of the case,"

(2)  when he "has been the target of personal abuse or criticism from the party before him," and

(3)  when he "has the dual role of investigating and adjudicating disputes and complaints."

*Buntion*, 524 F.3d at 672 (quoting *Bigby v. Dretke*, 402 F.3d 551, 559 (5th Cir. 2005)).

None of the alleged actions taken by Judge Anderson supports a finding of actual or presumptive bias. Petitioner's due process claim is without merit. Petitioner asserted no basis for an equal protection claim.

## <u>RECOMMENDATION</u>

It is the recommendation of the magistrate judge that the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a

Person in State Custody filed by Derrick Jerome Allen be denied.

Baton Rouge, Louisiana, July 30, 2013.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE